IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICKEY BANKS,                          )
                                       )
                    Plaintiff,         )
                                       )          Case No.  1:24CV391
                                       )                    1:24CV415
RYAN ROSS et al.,                      )
                    Defendants.        )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

These two cases both involve matters filed by Plaintiff Rickey Banks in state court and

removed to this Court, raising the same or similar claims against the same Defendants.  The

cases are before the Court on Motions to Dismiss filed by Defendants Ross, Waters, and

Prochet in both cases, and Motions to Remand filed by Plaintiff in both cases.  In addition,

Plaintiff filed nearly identical claims directly in this Court in Case No. 1:24CV291.  In that

federal case (1:24CV291), Plaintiff sought leave to proceed in forma pauperis, and the Court

has recommended that that action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for

frivolity and failing to state a federal claim upon which relief may be granted, but without

prejudice to Plaintiff filing state law claims in state court.  For the same reasons, the Motions

to Dismiss in 1:24CV391 and 1:24CV415 should be granted.  However, to the extent Plaintiff

brings state law claims against Defendant Huggins, including for alleged assault, those state

law claims should be remanded to state court.

## I.    BACKGROUND

Plaintiff brings claims for harms he alleges occurred during his stay at the Open Door Ministries' Arthur Cassell Memorial Transitional House (Cassell House), a transitional housing program he participated in following his release from prison,[1] through benefits he obtained through the United States Department of Veterans Affairs. (1:24CV391, Compl. [Doc. #2] at 8.)   Plaintiff brings claims against Elisabeth Waters, the director of the Cassell House; Cassell House employee Kellyce Hebert; men's shelter director Andrew Prochet; Executive Director of Open Door Ministries, Ryan Ross; and fellow resident Michael Huggins.[2] Plaintiff's claims and allegations are difficult to follow, but he appears to bring claims for alleged constitutional violations, for violations of the Americans with Disabilities Act, and for assault by co-resident Michael Huggins.   Plaintiff's claims all appear to relate to his disagreements with Cassell House employees and his dissatisfaction with the accommodations there.   In case 1:24CV391, Plaintiff contends that Defendants Waters, Hebert, Prochet, and Ross:

- denied Plaintiff medical services by waiting 10 minutes to call 911 when requested and then telling first responders that Plaintiff was "faking" (Compl. at 8, 10-11, 13);[3]
- moved Plaintiff from the transitional housing side of the facility to the shelter side of the facility for five days, resulting in bed bug bites (Compl. at 7, 14, 16);

---

[1] According to North Carolina Department of Corrections records, Plaintiff was convicted in 2013 of two counts of second-degree rape and two counts of participation in prostitution of a minor, and was released on parole on December 18, 2021.

[2] Plaintiff also initially asserted claims against Michael Bergondo of the Veterans' Administration, but Plaintiff voluntarily dismissed those claims, so Mr. Bergondo is no longer named as a Defendant in this case.

[3] As to this contention, Plaintiff attaches an EMS report to his Complaint in 1:24CV291, dated June 20, 2022, which reflects "no abnormalities" on assessment.   The narrative notes that Plaintiff was lying on the floor of the Cassell House office when EMS arrived, that the manager (presumably Ms. Waters) explained to EMS that Plaintiff "has behavioral issues and that every time the two of them have a verbal disagreement the [Plaintiff]

- denied Plaintiff transportation services by not allowing him to have a vehicle and evicting him for purchasing a vehicle (Compl. at 6, 12, 16);[4]
- discriminated against Plaintiff on the basis of race and disability by not selecting him to receive a vehicle under a donation program (Compl. at 6-7);
- allowed Plaintiff's medications to expire (Compl. at 7, 12);
- housed Plaintiff with another resident, Michael Huggins, resulting in Plaintiff being threatened by Mr. Huggins (Compl. at 8-9, 13);
- told law enforcement officers that Plaintiff no longer lived there, after Plaintiff moved out, resulting in Plaintiff being arrested (Compl. at 11); and
- allowed water from a burst pipe to flood the parking lot for 4 days (Compl. at 17).

Plaintiff makes similar claims in his briefing in Case 1:24CV415. Plaintiff also asserts claims against Michael Huggins, another resident, contending that Mr. Huggins discriminated against Plaintiff, threatened Plaintiff with a gun, and threatened that Mr. Huggins' family would kill Plaintiff. Plaintiff also alleges that Michael Huggins attempted to poison him by tampering with his food and drinks which caused him to become sick, bumped his wheelchair causing

---

suddenly has a 'medical emergency,'" that Plaintiff refused to cooperate in getting to the ambulance, that Plaintiff demanded to be taken to the VA hospital, that Plaintiff continued to "get worked up about whatever argument he had with the manager," that Plaintiff refused to sit in the wheelchair at the ER and slid into the floor in the middle of the hallway, and that Plaintiff "continued to cause a commotion in the waiting room and continued to yell at EMS to make sure he gets a ride to Salisbury VA." The clinical impression note reflects "[s]trange and inexplicable behavior." Plaintiff also attaches records from the Kernersville VA later that day, which reflect that "labs came back unremarkable but he kept complaining of his chest pain and also he told the social worker that he does not have a place to go and he does not know what is going to do . . . [t]he chest pain does not seem to be cardiac to me." The report further notes that Plaintiff "reports having a panic attack today when kicked out of his housing" and "admits to SI today and over the past couple of weeks primarily triggered by issues with his roommate, his case manager at ODM, and his recent loss of housing." He was admitted for inpatient psychiatric admission after being medically cleared. (1:24CV291, Compl. at 21, 30, 33, 36.)

[4] With respect to this contention, the medical records attached to the Complaint in 1:24CV291 reflect that Plaintiff reported to his medical providers that he was initially threatened with eviction based on a review of his bank statements to determine what programs he qualified for, and that during the argument on June 20, 2022, Ms. Waters had reviewed Plaintiff's most recent 3 months of bank statements, and she told him that he would be discharged from the program and would have 90 days to find a new place to live because the bank statements showed that Plaintiff "had donated to a congress person's campaign and spent $800 on a bike." (1:24CV291, Compl. at 39.) The medical records further reflect that when he left the hospital he was informed that he could return to Cassell House. (1:24CV291, Compl. at 104.) Plaintiff's filings do not include any other factual information about his ultimate discharge from Cassell House.

3

him to injure his back, and stalked him. (1:24CV391, Compl. at 18.)

II. DISCUSSION

These cases were originally removed from state court to this Court pursuant to 28 U.S.C. § 1442 because Plaintiff named as a Defendant Michael Bergondo of the Veterans Administration. However, Plaintiff voluntarily dismissed Mr. Bergondo in both cases, so that claim no longer provides a basis for federal jurisdiction. As noted above, it appears that Plaintiff seeks to bring claims that could be federal law claims, including claims under the Americans with Disabilities Act ("ADA"), as well as various constitutional claims, presumably under 42 U.S.C. § 1983, for violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

Defendants Ross, Waters, and Prochet have moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering these claims, the Court notes first that Defendants are not subject to suit under 42 U.S.C. § 1983 for alleged constitutional violations because there is no basis to conclude that they were acting under color of state law. "To state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of

4

action taken by the defendant under color of . . . state law.' The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019) (internal citations and quotations omitted); Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. . . . The state action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." (citations and quotations omitted)); see also Lloyd Corp. v. Tanner, 407 U.S. 551, 567 (1972) ("[T]he First . . . Amendment[] safeguards the rights of free speech and assembly by limitations on state action, not on action by the owner of private property used nondiscriminatorily for private purposes only.'"); United States v. Jacobsen, 466 U.S. 109, 113 (1984) ("This Court has . . . consistently construed [the Fourth Amendment] as proscribing only governmental action[.]"); United States v. Richardson, 607 F.3d 357, 364 (4th Cir. 2010) ("[T]he Fourth Amendment proscrib[es] only governmental action." (internal quotation omitted); Augustin v. SecTek, Inc., 807 F. Supp. 2d 519, 526 (E.D. Va. 2011) ("Plaintiff's claims for alleged violations of his Fourth and Fifth Amendment rights must be dismissed because the Fourth and Fifth Amendments proscribe only governmental action and do not apply to private actors."); Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 341 (4th Cir. 2000) ("With few exceptions, constitutional guarantees . . . 'do not apply to the actions of private entities.'"); Benson v. Commc'ns Workers of Am., 81 F.3d 148 (4th Cir. 1996) ("The

5

First Amendment and the Due Process Clause protect 'individuals only from governmental, not private, action.'"). In these cases, the Defendants are private actors. Plaintiff does not allege any facts suggesting that Defendants were acting under color of state law. Thus, Plaintiff has failed to state a claim for a First, Fourth, Fifth, or Eighth Amendment violation, and these constitutional claims should be dismissed.

Plaintiff also contends that various Defendants discriminated against him and failed to accommodate his disability in violation of the American with Disabilities Act ("ADA"). With respect to these claims, Title III of the ADA applies to homeless shelters or other social service center establishments, and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §§ 12181(7)(K) and 12182. Title III also requires that "'policies, practices, or procedures' of a public accommodation be reasonably modified for disabled 'individuals' as necessary to afford access unless doing so would fundamentally alter what is offered." PGA Tour, Inc. v. Martin, 532 U.S. 661, 688 (2001) (quoting § 12182(b)(2)(A)(ii)). However, Title III claims do not involve recovery of damages, only injunctive relief. 42 U.S.C. § 12188, § 2000a-3. Here, it appears that Plaintiff seeks monetary damages. Therefore, Plaintiff's claims for monetary damages under Title III fail to state a claim upon which relief can be granted, and should be dismissed on that basis.

Further, even if Plaintiff were seeking injunctive relief on his Title III claims, Plaintiff's claims are frivolous and fail to state a plausible claim. Plaintiff's contentions are difficult to

follow, but Plaintiff states that he was denied "services like transportation" in violation of the ADA and alleges that he was denied the receipt of a donated vehicle as an accommodation. Specifically, Plaintiff alleges that he was denied receipt of a vehicle from a donation program and was denied the ability to purchase a vehicle without facing repercussions, and the claims appear to relate to his frustration that another veteran was selected to receive a donated car. (Compl. at 8.)[5]  Plaintiff presents no other information about the program or how he was excluded from participating in the program.  To the extent Plaintiff contends that he should have received the car because he is disabled, Plaintiff possesses no right to such a preference system under Title III.  To the extent Plaintiff may be alleging exclusion from an unidentified transportation program, his allegations do not support a claim that he was qualified for the unidentified program, or that he was denied the ability to participate in any such program because of his disability.[6]  Plaintiff also fails to set out any facts to support a claim that he was denied access to Caswell House as a result of his disability.  Thus, after reviewing the

---

[5] The medical records attached to the Complaint in 1:24CV291 reflect that Plaintiff reported in June 2022 that he "does not drive" and "has no driver's license."  (1:24CV291, Compl. at 96.)

[6] Plaintiff also alleges that shelter employees "denied him the program and services of get[t]ing [him] a vehicle . . . [because he is] black."  (Compl. at 6.)  According to Plaintiff a white veteran received a vehicle from the donation program even though other black veterans did not.  As to this contention, it is unclear what statute or constitutional amendment Plaintiff intends to bring this claim under.  Even if the Court construes his claim to be one under 42 U.S.C. § 1981 and § 1982, there is no allegation of facts to support an inference that Plaintiff's race played a part in the alleged violation of his rights so as to state a claim under 42 U.S.C. §§ 1981 or 1982.  Plaintiff fails to set out any facts regarding the alleged program or services or Defendant's involvement in any such program, nor has he presented any facts to establish that the fact that he may not have received the donated vehicle was a result of race discrimination.

allegations in the Complaints, the Court concludes that Plaintiff has failed to state a claim under the ADA.[7]

Plaintiff may also be attempting to assert a claim under the Fair Housing Act ("FHA"). The FHA prohibits discrimination based on race with respect to "dwellings provided in whole or in part with the aid of loans, advances, grants, or contributions made by the Federal Government." 42 U.S.C.A. § 3603. The Act provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race." 42 U.S.C.A. § 3604(b). However, while Plaintiff alleges that Defendants discriminated against him on the basis of race, he fails to allege supporting facts. Plaintiff's filings are replete with allegations and complaints regarding the quality of the facilities, other residents of the facility, and conclusory allegations of discrimination, but such conclusory allegations are not sufficient to set forth a claim. The facts as alleged and the documents Plaintiff filed do not set forth facts to support a claim under the FHA on the basis of race discrimination.

The FHA also prohibits discrimination in the sale or rental of housing or otherwise making housing unavailable to a buyer or renter because of that individual's handicap. 42 U.S.C. § 3604(f). However, Plaintiff has failed to explain how he was discriminated against on the basis of handicap. While Plaintiff alleges that he has arthritis, uses a wheelchair, cane, and walker, has anxiety, and possibly suffers from diabetes and high blood pressure, it is unclear which alleged medical problem he contends is the handicap that was the basis of his allegation

---

[7] The same analysis would apply to the extent Plaintiff may be seeking to bring a claim under the Rehabilitation Act, 29 U.S.C. § 794(a).

of discrimination in violation of the FHA. Beyond this flaw in the pleading, the Complaints do not set out how he was precluded from housing at Caswell House because of his handicap, or how the actions of which he complains constitute discrimination on the basis of handicap, and Plaintiff does not draw a sufficient nexus between his alleged handicap(s) and Defendants' actions of which he complains. See Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 639 (4th Cir. 2016). Ultimately, even construed liberally, the Complaints fail to state a claim for violation of the FHA that is plausible on its face.

Plaintiff's filings also refer to "elder abuse . . . which is a felony," but Plaintiff cannot bring such claims in this action. Private citizens cannot lodge federal criminal charges. Sattler v. Johnson, 857 F.2d 224, 226–27 (4th Cir. 1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted.). Plaintiff may not bring civil claims for alleged violation of criminal laws, and Plaintiff has no judicially cognizable interest in the prosecution or non-prosecution of another. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).

For all of these reasons, and for the reasons set out in the Motions to Dismiss, Plaintiff has failed to state any federal claims. Plaintiff has also failed to specify the nature of any state law claims against Defendants Waters, Prochet, and Ross, and fails to set out sufficient factual allegations that would allow the Court to discern the basis for such claims. See El-Bey v. North Carolina, 2014 WL 691580 (M.D.N.C. Feb. 21, 2014) ("Even liberally construed, Plaintiff's vague ramblings and nonsensical claims are so incomprehensible no defendant could possibly be expected to defend this action. . . . Because Plaintiff has fallen well short of the requisite Rule 8 pleading standards, the Complaint must be dismissed under Rule

12(b)(6).""). If Plaintiff believes that he can sufficiently allege a state law claim, he would need to set that claim out clearly in state court. Therefore, the Motions to Dismiss should be granted. [8]

The Court also notes that Plaintiff filed Letter Motions [1:24CV391, Doc. #23; 1:24CV415, Doc. #22] that are primarily supplements to Plaintiff's response briefs. To the extent Plaintiff is requesting criminal charges against Defendants, those requests fail for the reasons discussed above. To the extent Plaintiff asks for discovery consisting of months of video from the facility, there is no basis for such discovery at this stage of the case and in light of this Recommendation.

Finally, to the extent Plaintiff seeks to bring claims against a fellow resident of the shelter, Michael Huggins, for assault or other related claims, it appears that any such claim based on the facts as alleged would be a state law claim, and would not provide an independent basis for federal jurisdiction in this case. The Court should decline to exercise supplemental jurisdiction over those claims in the absence of any federal claims that are proceeding. Therefore, it is recommended that Plaintiff's Motion to Remand be granted as to his remaining state law claims against Michael Huggins.

---

[8] As to Defendant Hebert, the record reflects that she was not served. (Doc. #14 at 10.) Therefore, any claims against her should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). Further, Plaintiff has sought leave to proceed in this Court *in forma pauperis* in Case No. 1:24CV291 against Defendant Hebert based on the same set of facts. As noted above, in that case, the Court recommended that that action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). For the same reasons, and for the reasons set forth further in this Recommendation, Plaintiff likewise fails to state a claim against Defendant Hebert.

III.    CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants Ross, Waters, and Prochet's Motions to Dismiss in [1:24CV391, Doc. #16; 1:24CV415, Doc. #15] be granted, and that the claims against Ross, Waters, Hebert, and Prochet be dismissed without prejudice.

IT IS FURTHER RECOMMENDED that in light of the dismissal of all of the federal claims, the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Michael Huggins, and that Plaintiff's Motions to Remand [1:24CV391, Doc. #15; 1:24CV415, Doc. #14] be granted as to those state law claims against Defendant Huggins, and that the claims against Defendant Michael Huggins be remanded to state court.

IT IS ORDERED that Plaintiff's Letter Motions [1:24CV391, Doc. #23; 1:24CV415, Doc. #22] are DENIED.

This, the 10th day of February, 2025.

Joi Elizabeth Peake
United States Magistrate Judge